IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-00-30-2 |
| | § | CIVIL ACTION NO. H-03-2915 |
| VICTOR HUGO CASTRO | § | |
| | § | |
| Defendant-Movant | § | |

**MEMORANDUM AND RECOMMENDATION
DENYING DEFENDANT'S MOTION FROM RELIEF FROM
JUDGMENT AND DISMISSING DEFENDANT'S PETITION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Victor Hugo Castro's second § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 311), which is captioned as a "Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure, Rule 60(b)(6)", the United States' Response thereto and Motion to Dismiss for Want of Jurisdiction (Document Nos. 314, 315), and Movant's Response in Opposition to Government's Response Regarding Rule 60(b)(6) (Document Nos. 316, 317). After reviewing the motions, the responses, the record of the proceedings before the District Court in the underlying criminal case and on appeal, his earlier attempt at federal post conviction relief, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Victor Hugo Castro's Motion for Relief from Final Judgment Pursuant to Federal Rules of Civil Procedure Rule 60(b)(6) (Document No. 311) be DENIED and that this, his second § 2255 Motion to Vacate, Set Aside or Correct Sentence, be DISMISSED WITHOUT PREJUDICE.

## I.  Procedural History

Movant, Victor Hugo Castro ("Castro"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Castro's second attempt at § 2255 relief.

On January 19, 2000, Castro was charged by indictment with drug trafficking activities. (Document No. 1). In particular, Castro was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 846 (count one), aiding and abetting the possession with intent to distribute five hundred grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (B)(1)(B) and 18 U.S.C. § 2 (counts three, six, and seven); aiding and abetting in the possession of less than five hundred grams of cocaine in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2 (count four); and aiding and abetting the possession with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 (counts five and eight). (Document No. 1). On September 18, 2000, Castro pleaded guilty to count one, without a written Plea Agreement. (Document No. 126; Transcript of Rearraignment Hearing, Document No. 256). Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared, to which Castro filed written objections.[1] (Document Nos. 204, 210, 232). A PSR was filed on April

---

[2] Castro objected to not being awarded a three level reduction for acceptance of responsibility. Also, Castro objected to being characterized as a manager. According to Castro, he and Hans Fajardo were equals, Hans Fajardo acted independently of Castro and as a result, Castro did not manage Hans Fajardo. Likewise, Castro argued that he had no managerial authority over Jhyomar Angulo-Castro. (Document No. 204). In addition, Castro filed Amended Objections to the PSR, in which Castro objected to a telephone conversation with an unidentified male about the sale of cocaine; objected to all references to his brother Jorge Castro; and objected to being held accountable for selling crack cocaine. According to Castro, he should be held responsible for 4.75 kilograms of cocaine, which was described in ¶ 44 of the PSR. (Document No. 210). Finally, Castro filed Second

26, 2001, pursuant to which Castro's sentence was calculated as follows: In calculating Castro's base offense level, Castro was held accountable for 5,570 kilograms of marijuana (231 grams of cocaine base was converted to 4,620 kilograms of marijuana, and 4.75 kilograms of cocaine powder was converted to 950 kilograms of marijuana), which under U.S.S.G. § 2D1.1 directs a base offense level of 34; (2) because Castro was found to hold a managerial position[2] under U.S.S.G. § 3B1.1(b), his base offense level was increased by three levels, for an adjusted offense level of 37; (3) because Castro accepted responsibility, his offense level was reduced by three levels pursuant to U.S.S.G. § 3E1.1, for an adjusted offense level of 34; (4) With a total adjusted offense level of 34, and with a criminal history category of II, Castro had a guideline sentence range of 168 to 210 months. On June

---

Amended Objections to the PSR (Document No. 232), in which he again objected to being characterized as a manager/leader. In particular, Castro objected to ¶ 32 of the PSR which states in pertinent part: "according to the case agent, Victor Castro had directed Fajardo to make the transaction." According to Castro, "[o]ther than the case agent's comments, there is no evidence that the defendant, Castro directed Fajardo to make the transaction. Conveniently, Fajardo has already been deported to Colombia and is unavailable to testify as to whether or not the defendant directed him. The case agent's comments are included solely for the purpose of having the court find that the defendant was a manager. Since there was no corroboration of the case agent's comments, this statement should be deleted." (Document No. 232, pp. 1-2).

[2] With respect to Castro's managerial role, Castro was given a three level upward adjustment based on his role in the cocaine trafficking organization:

> Victor Castro is the brother of Jorge Castro and was a manager in this cocaine trafficking organization. When Jorge Castro was out of the country for a month in July/August, 1998, Victor Castro was in charge of the operation. He recruited Hans Fajardo and Jhoymer Angulo-Castro to participate in the distribution of narcotics. Victor Castro participated and coordinated several drug transactions including those occurring on July 10, 1998, August 11, 1998, September 1, 8 and 11, 1998; and February 10, 1999. According to the DEA agent, Victor Castro had a separate source of supply for the cocaine base. He is held accountable for 4.75 kilograms of cocaine powder and 231 grams of cocaine base. As the manager he should receive a three-level upward adjustment for his role in the offense. (Document No. 201, ¶ 44).

3

22, 2001, Castro was sentenced to 189 months incarceration, to be followed by a five year term of supervised release. (Document No. 234; Transcript of Sentencing Hearing, Document No. 257, p. 17). The Court imposed a $100 special assessment and a fine of $5,000. (Document No. 234; Transcript of Sentencing Hearing, Document No. 257, p. 18). Judgment was entered on July 3, 2001. (Document No. 238). In connection with Castro's sentencing, the Government moved to dismiss the remaining counts (Document No. 236). The Court granted the Government's request and counts three, four, five and six were dismissed on June 22, 2001. (Document No. 237).

On September 24, 2001, Castro filed a Notice of Appeal with the Fifth Circuit Court of Appeals. (Document No. 250). The sentence of the District Court was affirmed by the Fifth Circuit on September 5, 2002. (Document Nos. 264, 265). The Fifth Circuit Court of Appeals held that the District Court had not erred in not considering Castro's status as an illegal alien; had not erred in assessing a three level enhancement based on Castro's role as a manger; and had not erred in holding Castro accountable for 231 grams of crack cocaine in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Document No. 265). In affirming the Court's application of the sentencing guidelines, and in particular, the finding that Castro held a managerial role in the drug trafficking organization, the Fifth Circuit wrote:

> Castro contends that the district court misapplied the Guidelines when it increased his offense level under U.S.S.G. § 3B1.1(b). He bases this allegation on the fact that the district court did not issue specific findings that he exercised some degree of control over at least four other participants. Castro also contends that, in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), this issue should have been submitted to the jury.
>
> Under U.S.S.G. § 3B1.1(b), a three level increase is permitted "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was other extensive." U.S.S.G. § 3B1.1(b). "Proof that the defendant supervised only one other culpable participant is sufficient to make the defendant eligible for the enhancement." *United States v. Cooper*, 274

F.3d 230, 247 (5th Cir. 2001). Also, in calculating the number of participants, the defendant may be included among the five. *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994). In determining whether a defendant is a leader, a court should consider the following factors: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree and control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4). We review such a factual finding for clear error. *United States v. Thomas*, 120 F.3d 564, 574 (5th Cir. 1997).

At sentencing, the prosecutor introduced portions of recorded conversations between Castro and Absalon Murillo-Gamboa which could reasonably be construed as implicating Castro as a manager. Other intercepted wire communications involving Castro were also presented. After hearing arguments and reviewing the evidence presented, the district court found that the preponderance of the credible evidence supported the three point enhancement. The district court also later adopted the presentence report's findings of facts and application of the Guidelines to the facts. The presentence report's summary of Castro's role in the offense states:

> Victor Castro is the brother of Jorge Castro and was a manager in this cocaine trafficking organization. When Jorge Castro was out of the country in July/August 1998, Victor Castro was in charge of the operation. He recruited Hans Fajardo and Jhoymar Angulo-Castro to participate in the distribution of narcotics. Victor Castro participated and coordinated several drug transaction [sic] including those occurring on July 10, 1998; August 11, 1998; September 1, 8, 11, 1998; and February 10, 1999. According to the DEA agent, Victor Castro had a separate source of supply for the cocaine base. He is held accountable for 4.75 kilograms of cocaine powder and 231 grams of cocaine base. As the manager he should receive a three-level upward adjustment for his role in the offense.

"Ordinarily, a PSR [presentence report] bears sufficient indicia of reliability to be considered as evidence by the sentencing judge when making factual determinations." *Cooper*, 274 F.3d at 239 (citing *United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir. 1998)). "The district court may adopt the facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Id.* (citing *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)). In the present case, it is clear that the district court not only considered the evidence as to whether the adjustment was justified, but also permissibly relied upon the presentence report for its findings of fact. As such, Castro

has failed to demonstrate how the district court's decision was clearly erroneous. (Document No. 265, pp. 7-10).

The mandate issued on September 30, 2002. (Document No. 264).

On July 28, 2003, Castro filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 275), in which he alleged that he was denied effective assistance of counsel at sentencing because counsel failed to adequately object to the three level enhancement to his sentence based on his role in the offense, and failed to adequately investigate and present evidence contradicting the factual basis for the enhancement. Castro argued that because he did not have a managerial role, his guideline sentence was improperly calculated. According to Castro, had counsel conducted a more thorough investigation into his role in the offense, his investigation would have shown that Castro was left with his brother's cell phone for one month while his brother was outside the United States, that Jorge Castro, his brother, had decision making authority, and that Murillo-Gamboa shared in larger profits and planning. In addition, Castro filed a Motion to Amend § 2255 motion to assert a claim that enhancements to his sentence violated his Sixth Amendment right to have a jury and not a judge make such determinations. (Document No. 291). The undersigned Magistrate Judge issued two Recommendations (Document No. 286, 292), both of which recommended that Castro's § 2255 motion and amended § 2255 motion be denied. Judge Harmon, in a Memorandum and Order dated October 20, 2005, adopted the Memoranda and Recommendations in full, denied Castro's motions and dismissed the action with prejudice. (Document Nos. 295, 296). Thereafter, on June 9, 2006, Castro filed the instant Rule 60(b)6) motion (Document No. 311), in which he raises a claim of ineffective assistance of counsel, an unconstitutional sentencing enhancement claim, and a government misconduct claim. According to

Castro, this motion is appropriately brought under Rule 60(b)(6) because he could not have raised his misconduct claims earlier. The United States has moved to dismiss Castro's Motion for Relief pursuant to Rule 60(b)(6) on the ground that regardless of Castro's characterization of his claims, he is in fact, attacking the validity of his conviction as a manager in the drug trafficking organization, and as such, Castro's motion is a successive § 2255 motion and should be dismissed for want of jurisdiction because Castro has not sought leave to file a successive § 2255 motion from the Fifth Circuit Court of Appeals.

**II. Castro's Section 2255 motion is successive**

Rule 60(b) of the Federal Rules of Civil Procedure provides for the setting aside of a civil order or a civil judgment as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason the justifies relief.

While the rule does not apply to criminal judgments, it may apply to civil judgments entered in post-conviction § 2255 proceedings. *See Gonzalez v. Crosby*, 125 S.Ct. 2641, 2651 (2005) ("[W]hen a

Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the motion should be considered as a Rule 60(b) motion and not a successive motion under 28 U.S.C. § 2255.") *Id.* at 2648. Here, although Castro captions the instant motion as a "Motion for Relief from Judgment Pursuant to Federal Rules of Civil Procedure Rule 60(b)(6)" and argues that he is attacking a defect in the integrity of the federal habeas proceedings, he attacks the district court's resolution of his claims on the merits. As such, Castro challenges the validity of his conviction, and *not* his prior § 2255 proceeding, and therefore, Rule 60(b)(6) is not applicable and his motion is properly construed as a Section 2255 Motion to Vacate, Set Aside, or Correct. *See United States v. Rich*, 151 F.3d 550, 552 (5th Cir. 1998) (holding that district courts may treat a federal prisoner's Rule 60(b) attack on a denial of a Section 2255 motion as a Section 2255 motion when it attacks the validity of the prisoner's conviction), *cert. denied,* 526 U.S. 1011 (1999). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2255 to provide that:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain–
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Of significance for the instant action, AEDPA further amended 28 U.S.C. § 2244 to provide that:

> (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

Pursuant to 28 U.S.C. § 2244(3)(A), Castro must first obtain authorization from the Fifth Circuit before this Court has jurisdiction to entertain Castro's successive § 2255 motion. *See United States v. Orozco-Ramirez,* 211 F.3d 862 (5th Cir. 2000); *United States v. Key,* 205 F.3d 773, 774 (5th Cir. 2000); *Hooker v. Sivley,* 187 F.3d 680, 681-82 (5th Cir. 1999); *United States v. Rich,* 141 F.3d 550, 554 (5th Cir. 1998), *cert. denied,* 526 U.S. 1011 (1999). Here, Castro filed his second federal habeas motion without first obtaining Fifth Circuit authorization to do so. As a result, until Castro obtains the Fifth Circuit's approval to file another federal habeas motion, this Court lacks jurisdiction over the instant action, and it should therefore be dismissed without prejudice.

### III.   Conclusion and Recommendation

Based on the foregoing, the Magistrate Judge

RECOMMENDS that Movant Victor Hugo Castro's Motion for Relief from Judgment Pursuant to Federal Rules of Civil Procedure Rule 60(b)(6) be DENIED, and that this proceeding, construed as a § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 311) be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved

party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77028.

Signed at Houston, Texas, this 17th day of April, 2008.

Frances H. Stacy
United States Magistrate Judge